<u>NOT FOR PUBLICATION</u>




# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>Alex A. Farahmand & Amparo E. Farahmand,<br><br>Debtor(s). | BK. No. SV 04-16883 MT<br><br>Chapter 7<br><br>ADV No. 05-01060 MT |
| Amparo D. Rodriguez,<br><br>Plaintiff(s),<br><br>v.<br><br>Alex A. Farahmand & Amparo E. Farahmand,<br><br>Defendant(s). | **MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  April 13, 2005<br>Time: 2:00 p.m.<br>Place: Courtroom 302 |

On June 14, 2002, Plaintiff filed in state court a Second Amended Complaint containing two causes of action: quiet title and intentional infliction of emotional distress. The defendants did not answer or respond to the Second Amended Complaint. Therefore, on August 5, 2002, plaintiff was granted summary judgment on her Motion for Summary Adjudication on the First Cause of Action for Quiet Title. Plaintiff's counsel served defendants with a Statement of

Damages on August 14, 2002. Then, on September 17, 2002, plaintiff requested entry of default against both defendants, which was entered that same day. Final Judgment was entered on June 16, 2003 against defendants and served on June 17, 2003 and August 14, 2004. The state court judgment was for a total of $678,064.21, with annual interest accruing at a rate of ten percent per year, from and after June 16, 2004.

Plaintiff now brings this Motion for Summary Judgment, or alternatively, summary adjudication, on her Adversary Complaint filed on January 21, 2005. Plaintiff requests summary judgment that defendants' debt to plaintiff is nondischargeable under sections 523(a)(4) and 523(a)(6) of the Bankruptcy Code.

**Law on Summary Judgment**

In considering a motion for summary judgment, the court must view the evidence, and all justifiable inferences drawn from that evidence, in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

However, even though the moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial," the party opposing a motion for summary judgment may not rely on mere allegations or denials of the pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 248. Once the moving party has met its initial burden, the party opposing summary judgment must present specific facts showing that there is a genuine issue for

trial. Id. at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to the party's case, on which the party would bear the burden of proof at trial, the court may grant summary judgment against that party. Celotex, 477 U.S. at 322.

**Sections 523(a)(4) & 523(a)(6)**

A debt is nondischargeable if it is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "The broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context." Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir. 1986). However, "the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." In re Cantrell, 329 F.3d 1119, 1125 (9th Cir. 2003); Lewis v. Scott, 97 F.3d 1182, 1185 (9th Cir. 1996). Therefore, constructive, resulting, and implied trusts do not give rise to the fiduciary relationship required for nondischargeability under section 523(a)(4). Ragsdale, 780 F.2d at 796.

A debt is nondischargeable if it is a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Only acts done with a deliberate intent to cause injury constitute "willful and malicious injury" within the meaning of section 523(a)(6). Kawaauhua v. Geiger, 523 U.S. 57, 61 (1998); In re Baldwin, 249 F.3d 912, 917 (9th Cir. 2001). Thus, section 523(a)(6) does not discharge recklessly or negligently inflicted injuries. Geiger, 523 U.S. at 64.

**Collateral Estoppel Law**

Collateral estoppel principles equally apply in discharge exception proceedings under section 523(a) to prevent the relitigation of issues already determined in a prior proceeding. Grogan v. Garner, 498 U.S. 279, 284-85 (1991). The party seeking to employ collateral estoppel principles has the burden of proof to present the court with "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." In re Tobin, 258 B.R. 199, 202-03 (9th Cir. BAP 2001), citing Kelly v. Okoye (In re Kelley), 182 B.R. 255, 158 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996).

The law of the state in which a judgment was entered dictates the preclusive effect to be applied. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Accordingly, California collateral estoppel law is determinative in the instant case. California law provides that a prior judgment will be given collateral estoppel effect when the following requirements are satisfied: (1) the issue in the current proceeding must be identical to an issue decided in the prior proceeding, (2) the issue in the prior proceeding was actually litigated, (3) the issue was necessarily decided in the prior proceeding, (4) the decision in the prior proceeding was final and on the merits, and (5) preclusion is sought against the same party, or a party in privity with the same party, as in the prior proceeding. In re Baldwin, 249 F.3d at 917-18.

Furthermore, collateral estoppel applies when judgment has been procured by default as long as (1) defendant had actual knowledge of the proceedings and a "full and fair opportunity to litigate," In re Cantrell, 329 F.3d 1119, 1124 (9th Cir. 2003), and (2) the prior proceeding's record either demonstrates an express finding upon the allegation for which preclusion is sought or the court in the prior proceeding necessarily decided the issue, in that the issue was actually litigated. Id. A default judgment represents a judgment "on the merits" and defendant may not

relitigate liability on the same claims in later litigation. Martin v. General Finance Co., 239 Cal.App.2d 438, 443 (1966).

**FACTS**

Based on the undisputed evidence in the record, the following facts form the background of this dispute. Plaintiff, Amparo D. Rodriguez, was the adoptive mother of defendant Esther Farahmand (aka Amparo E. Farahmand). Esther Farahmand is married to defendant Alex A. Farahmand. On March 21, 2002, Amparo D. Rodriguez filed her first complaint against the defendants, Esther and Alex Farahmand, in Los Angeles Superior Court. Defendants, represented by counsel, answered the original complaint and participated in the litigation of the case, including discovery. On June 14, 2002, plaintiff filed her Second Amended Complaint, alleging two causes of action against defendants. As the trustor and the sole intended beneficiary of the revocable living trust, The Amparo D. Rodriguez Family Trust (the "Trust") alleged, in the first cause of action for quiet title, that defendants transferred all right, title and interest to two parcels of real property owned by the Trust to Alex Farahmand by grant deed, without the knowledge of plaintiff. The Complaint asserted that defendants did not have any power of attorney and did not have any authority to transfer the property of the Trust or to act as the attorney-in-fact for the Trust. Plaintiff further claimed that defendants, knowing that the Trust possessed the sole valid and legal title to the two properties, fraudulently recorded the two grant deeds on February 20, 2002, and used the properties as collateral for various loans, including a line of credit from Bank of America, in exchange for which a lien in the form of a deed of trust was placed upon the Trust's real property. The relief requested in the first cause of action was to quiet title as of February 20, 2002, the date of the purported recordation of the deeds.

In the second cause of action based on intentional infliction of emotional distress, plaintiff alleged that defendants' actions transferring title to the Trust's property to defendant Alex Farahmand, without any authority to do so, for the purpose of benefitting defendants, were intentional, malicious, fraudulent and outrageous, and meant to cause emotional distress to plaintiff, who was particularly susceptible to suffer physical and emotional anguish because of her elderly age of 85, congestive heart failure, diabetes, and arthritis. Plaintiff requested an award of damages against each defendant separately for medical and special damages, and for exemplary and punitive damages according to proof.

When defendants failed to respond to or answer the Second Amended Complaint, plaintiff requested entry of default against both defendants, separately, on September 17, 2002. Pursuant to the request, the Clerk entered default that same day and notification of the entry of default was mailed to each defendant and their counsel of record, Steven Ross, on that date. On August 14, 2002, plaintiff served defendants' counsel with a Statement of Damages. The state court rendered the final judgment of $678,064.21, with interest accruing at a rate of ten percent per year from and after June 16, 2004, in favor of plaintiff, on June 16, 2003, after conducting a prove-up hearing in which the court listened to evidence from plaintiff in support of the award of damages.

**Adequacy of Notice During the State Court Proceeding**

The default judgment is a valid judgment against defendants, as they were given proper notice at all stages of the state court litigation, and therefore, had a "full and fair opportunity to litigate" In re Cantrell, 329 F.3d 1119, 1124 (9th Cir. 2003). The following evidence indicates that defendants had notice at the different stages of litigation: (1) plaintiff served the Second

- 6 -

Amended Complaint on defendants' counsel of record at the time, Steven U. Ross; (2) despite active participation in discovery matters and continuing to appear in the litigation deriving from the cross-complaint of Bank of America, defendants chose not to answer or respond to plaintiff's Second Amended Complaint (See June 16, 2003 Superior Court Transcript, p. 2, ln 22 - p. 3, ln 11); (3) on September 17, 2002, plaintiff requested entry of default against both defendants and pursuant to the request, the Clerk entered default against both defendants (See Entry of Default against Alex A. Farahmand, September 17, 2002; Entry of Default against Amparo Esther Farahmand, September 17, 2002); (4) both defendants, as well as their attorney of record on that date, Steven U. Ross, were served with the entry of default (See id.; June 16, 2003 Superior Court Transcript, p. 2, ln 25-27; p. 3, ln 22-24); nonetheless, defendants failed to move to set aside entry of default (See June 16, 2003 Superior Court Transcript, p. 2, ln 28 - p. 3, ln 11); (5) the state court found that noncompliance with the court's prior discovery order and defendants' continuing failure to supply discovery in response to new requests was so egregious that even if defendants had filed a motion to set aside default, the court would "for separate and independent reasons enter the default of the two defendants for their gross noncompliance with discovery" and defendants would "not be afforded the opportunity to file and answer" (Superior Court Transcript of Proceedings, November 15, 2002, p. 5, 6); (6) a statement of damages, setting forth the outer limit of damages sought by plaintiff was served on August 14, 2002 (See June 16, 2003 Superior Court Transcript, p. 3, ln 16-21); (7) the request for default judgment had been served on defendants with a courtesy copy to their last attorney of record, Nikola Mikulicich (Id., p. 3, ln. 22-24); and (8) default judgment was filed on June 16, 2003 and plaintiff served defendants and their counsel with the Notice of Entry of Judgment on June 17, 2003.

"It appearing that defendants ALEX A. FARAHMAND and AMPARO ESTHER RODRIGUEZ FARAHMAND, having been regularly served with process and having failed to answer plaintiffs' Second Amended Complaint within the time allowed, and the default of these defendants having been entered by the clerk on September 17, 2002, on application of plaintiffs to this court, and after having heard and considered the evidence presented," the state court judge signed the default judgment and judgment was entered on June 16, 2003 on both the quiet title and intentional infliction of emotional distress causes of action. Superior Court default judgment, filed June 16, 2003. Defendants even admit to "abandon[ing] the defense against Plaintiff's action." Opposition to Motion for Summary Judgment, p. 14, ln 16. With so many opportunities to actively participate in the state court litigation and defend against plaintiff's claims, defendants cannot now claim that the default judgment entered against them was unfair.

Defendants argue that service of the Clerk's Entry of Default against each defendant on September 17, 2002 was invalid because attorney Steven U. Ross was not counsel of record on the date of service, as he had filed a motion to be relieved as counsel that was approved by the court on September 6, 2002. However, a review of the transcript from a September 17, 2002 hearing proves otherwise. During this hearing, the judge determined that defendants' new counsel, Nikola Mikulicich, was not authorized to appear for defendants on that day, because the order approving the motion to be relieved as counsel would only take effect when Mr. Ross filed the proof of service. Superior Court Transcript of Proceedings, September 17, 2002, p.2, ln 1-6; p. 5, ln 9-14. Since proof of service of the order causing withdrawal of Steven U. Ross had not yet been filed, Mr. Ross remained counsel of record for defendants on September 17, 2002 (See id.), the date when default was entered against defendants and service was effected.

-8-

Defendants also argue that after entry of default, the Court has no jurisdiction to hear any proceedings other than a motion to set aside default. Defendants cite the case of W.A. Rose Co. for this proposition. W.A Rose Co. v. Mun. Court for Oakland-Piedmont Judicial Dist., 176 Cal.App.2d 67, 72 (1960). Defendants unfortunately misunderstand the W.A. Rose Co. case and have mischaracterized its holding. The court does not automatically lose all jurisdiction when default has been entered. Rather, the court only loses jurisdiction to consider untimely filings and motions when plaintiff has requested entry of default and default should have been entered but instead was improperly withheld. Id. at 72-73. W.A. Rose Co. is inapposite to the instant case. Upon request of plaintiff, entry of default was properly entered against defendants; therefore, the Court did not lose any jurisdiction on subsequent motions brought by plaintiff.

Having decided that the notice to defendants in the state court proceeding was adequate and because defendants failed to move to set aside the default or to appeal the default judgment, the judgment entered on June 16, 2003 became final. This Court cannot second guess the state court's findings of service, which were fully considered during the prove-up hearing on the default judgment. Therefore, if plaintiff can show that the default judgment and the state court record reflect that the state court already determined the issues to be decided in this court regarding the plaintiff's nondischargeability complaint, collateral estoppel will apply and summary judgment must be granted.

**Section 523(a)(4)**

Plaintiff seeks nondischargeability of the judgment debt for "fraud . . . while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). In the complaint, plaintiff alleges that "Defendant A.E. FARAHMAND [(Esther Farahmand)] was acting as a fiduciary at the time she purported to

-9-

use the October 14, 1996 written Power of Attorney as her authority to act as Plaintiff's attorney in fact in making the two transfers of title to her husband A. A. FARAHMAND [(Alex Farahmand)]." Complaint, p. 4, ¶12. However, at the same time, plaintiff makes the contradictory allegation that "[p]ursuant to the October 14, 1996 written Power of Attorney, defendant A.E. FARAHMAND [(Alex Farahmand)] was permitted to act as Plaintiff's attorney in fact solely for the benefit of Plaintiff and only upon a determination of Plaintiff's incapacity . . . . [but that n]ever at any time has Plaintiff been incapacitated under the terms and provisions provided for in the October 14, 1996 written Power of Attorney." Id. ¶ 13.

In this case, as plaintiff essentially admits in her nondischargeability complaint, there was no fiduciary relationship existing between plaintiff and defendants at the time that defendants transferred title to plaintiff's property. "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." In re Cantrell, 329 F.3d 1119, 1125 (9th Cir. 2003). Plaintiff argues that the fiduciary relationship has been established because defendants admitted during discovery in the state court action that they were acting as fiduciaries under a 1996 Power of Attorney that empowered them to manage plaintiff's finances if plaintiff became incapacitated. However, the mere fact that defendants transferred plaintiff's property based upon a purported fiduciary relationship does not mean that defendants were actually authorized to act as fiduciaries for plaintiff. In fact, plaintiff grounded her state court claims on the argument that defendants lacked authority to transfer the property of plaintiff and did not have a valid fiduciary relationship with plaintiff. Under the terms of the 1996 Power of Attorney, defendant Esther Farahmand was only authorized to act as plaintiff's fiduciary if plaintiff became incapacitated and plaintiff's incapacity was adjudicated by a court or by the declarations of two medical doctors. Neither

- 10 -

condition occurred. Defendant never retained the power to act as plaintiff's fiduciary, and therefore, defendant could not have committed a fraud while acting in a fiduciary capacity.

For collateral estoppel to apply and summary judgment to be granted on the section 523(a)(4) claim, the state court would have had to find that defendants defrauded plaintiff while acting in a fiduciary capacity. The transcript from the default judgment prove-up proceeding proves otherwise: "[The 1996 Power of Attorney] was clearly insufficient . . . to authorize property transfers." See June 16, 2003 Superior Court Transcript, p. 21, ln 24-26. In response to the judge's finding, plaintiff's counsel affirmed, "That's Correct." Id. at ln 27. This evidence precludes plaintiff's section 523(a)(4) claim based on collateral estoppel.

Summary judgment on plaintiff's section 523(a)(4) claim is, accordingly, denied.

**Section 523(a)(6)**

Debts derived from "willful and malicious injury by the debtor to another entity or to the property of another entity" are not dischargeable by the debtor. 11 U.S.C. § 523(a)(6). A "willful and malicious injury" is an act that is done with the specific intent to cause injury. Kawaauhua v. Geiger, 523 U.S. 57, 61 (1998); In re Baldwin, 249 F.3d 912, 917 (9th Cir. 2001). Thus, an injury inflicted negligently or recklessly does not constitute a nondischargeable debt under section 523(a)(6). Geiger, 523 U.S. at 64.

In the state court action, plaintiff was awarded a $678,064.21 default judgment on her two claims, for quiet title and intentional infliction of emotional distress, after a prove-up hearing for damages concluded. Compensatory damages totaled $497,417.66, punitive damages totaled $112,225.00, attorneys' fees totaled $64,650.00, and costs and disbursements totaled $3,771.55. Having already determined previously on summary judgment that defendants unlawfully

- 11 -

conveyed title to property owned by plaintiff while acting as plaintiff's purported authorized agent, although having no actual right to do so, the only issue that remained was the intentional infliction of emotional distress claim. At the prove-up hearing, the court made findings that defendants defaulted on the second amended complaint.   June 16, 2003 Superior Court Transcript, p. 2, ln 22-24. Default was entered by the Clerk on September 17, 2002 and although defendants appeared in the cross-complaint, they failed to move to set aside the default on plaintiff's complaint. Id. at p. 2, ln 25-27, p.3 ln 3-11. After finding that the plaintiff served both the Statement of Damages and the Default Judgment on defendants and that the paperwork on the default judgment was complete, the court turned to the issue of plaintiff's proof of damages for her claim of intentional infliction of emotional distress. Id. at p. 3, ln 16-28; p. 4, ln 1-15. Defendants did not appear at the prove-up hearing.

Plaintiff, Amparo D. Rodriguez, testified as to the anguish she suffered as a result of defendants' improper taking and mortgaging of plaintiff's property, an apartment building that plaintiff used as an income producing property as well as a residence. During the course of plaintiff's testimony in court, directed by plaintiff's counsel but interrupted by questions from the judge, plaintiff revealed the following evidence: (1) plaintiff was 86 years old at the time of the prove-up hearing (Id. at p.7, ln 6); (2) plaintiff was hospitalized and suffered from lack of sleep, nightmares, chest pains, anxiety, and weight loss, as a result of finding out that her adopted daughter, defendant Esther Farahmand, had transferred plaintiff's property to her husband, Alex Farahmand, and had schemed to use the property to their personal benefit (Id. at p. 7, ln 19-22; p. 9, ln 14-22; p. 14, ln 28 - p.15, ln 1-2; p. 10, ln 9-26); (3) plaintiff was a diabetic, had arthritis, and had heart disease (Id. at p. 9, ln 25-27); (4) defendants knew at the time of transferring plaintiff's property for their own benefit, of plaintiff's physical conditions and that plaintiff's

- 12 -

doctor advised that she was not to be stressed or have anxiety (Id. at p. 11, ln 28 - p. 12, ln 17); (5) plaintiff began seeing a psychiatrist to treat her resulting depression (Id. at p. 11, ln 6-19); and (6) plaintiff had no reason to believe that defendants were hostile to her or that they would try to transfer her property without her permission (Id. at p. 26, ln 18-27).

After hearing the evidence provided by plaintiff's testimony, the judge made the following findings: (a) plaintiff had no reason to "lose a parent's love and confidence" in her adoptive daughter, Esther Farahmand, until learning of defendants' unauthorized transfer of her property (Id. at p. 29, ln 22-25); (b) plaintiff made a sufficient showing with respect to punitive damages and plaintiff had shown by "clear and convincing evidence malice, fraud, and oppression" (Id. at p. 33, ln 25 - p. 34, ln 16; Superior Court default judgment, June 16, 2003, ¶ 3); and (c) the court was "satisfied with the proof of the claim for special and general damages" (Id. at p. 32, ln 16-17), specifically for the amounts of $497,417.66 for general damages (Id. at p. 32, ln 24-25), $64,650.00 for attorney's fees (Id. at p. 32, ln. 28 - p. 33, ln 1-4), $3,771.55 for costs (Id. at p. 33, ln 21-24), and $112,225.00 for punitive damages (Id. at p. 36, ln 7-12).

The tort of intentional infliction of emotional distress requires (1) extreme and outrageous conduct by defendant, (2) with the intent of causing, or acting with reckless disregard of the probability of causing, emotional distress, (3) plaintiff suffered severe or extreme emotional distress, and (4) defendant was the actual and proximate cause of the emotional distress by defendant's outrageous conduct. Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). As a general rule, the factual allegations of the complaint will be taken as true upon default by defendant. Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). In the second amended complaint, upon which plaintiff won by default, plaintiff sufficiently pled the elements of intentional infliction of emotional distress. See Second Amended Complaint, filed June 14,

2002, ¶¶ 23, 29, 33-36. Thus, these allegations in plaintiff's Second Amended Complaint shall be taken as true, for the purposes of the summary judgment proceedings.

"[O]n a motion for summary judgment, all inferences should be drawn in favor of the non-moving party . . . . [, a]ccordingly, inferences to support the use of collateral estoppel on a summary judgment motion can only be drawn if they are the only reasonable inferences that could be drawn from the prior judgment." Clayton v. Clayton, 168 B.R. 700, 707 (Bankr. N.D. Calif. 1994). As to the requirements of collateral estoppel, the default judgment against defendants constitutes a final decision on the merits and preclusion is sought against defendants, who were the same party against which the default judgment was rendered in the prior proceeding. Having already found that notice was sufficient throughout the state court litigation, I find that the issue was actually litigated and necessarily decided in the prior proceeding.

The remaining element is whether the issue in the current proceeding regarding section 523(a)(6) is identical to an issue decided in the prior state court proceeding. The fact that the state court found by "clear and convincing evidence malice, fraud, and oppression," with respect to defendants' transferring title to plaintiff's property and using it to obtain a line of credit for defendants' own benefit, persuades this Court that the only reasonable inference that could be drawn from the prior judgment is that the state court found that defendants' injury to plaintiff was "willful and malicious." Defendants knew that they did not have a legal right to transfer plaintiff's property for their own benefit. Defendants also knew that plaintiff was elderly and had many infirmities that would be agitated by such a fraud. Another contributing factor is that defendants were family to plaintiff, as defendant Esther Farahmand was plaintiff's adoptive daughter and Alex Farahmand was Esther's husband. Therefore, both defendants were deeply trusted by plaintiff. Given their close familial relationship, and their knowledge of their

wrongdoing and of plaintiff's unstable medical condition, defendants actions were "willful and malicious."

This Court finds that collateral estoppel applies to preclude the relitigation of the issues already decided in the state court proceeding on the second amended compliant. The state court found defendants liable for intentional infliction of emotional distress, an intentional tort, and awarded damages according to proof for plaintiff's resulting injury. Aware of plaintiff's old age and infirmities, defendants transferred title the plaintiff's properties and encumbered plaintiff's residence with a lien, knowing that they did not have the legal right to do so. This constitutes a "willful and malicious injury," within the meaning of section 523(a)(6). Therefore, the state court judgment debt is nondischargeable.

Summary judgment on plaintiff's section 523(a)(6) claim is granted.

**The Effect of Plaintiff's Death**

On March 13, 2006, following oral argument on the motion for summary judgment, defendants filed an Ex Parte Application (1) To Take the Summary Judgment Motion Off Calendar; (2) To Dismiss the Adversary Proceedings; and (3) To Set a Hearing for the Imposition of Sanctions Against R.J. Strotz (the "Ex Parte Application"). Defendants argued that plaintiff's counsel, R.J. Strotz, with the intent to mislead and defraud the Court and defendants, purposefully hid and did not disclose the fact that plaintiff, Amparo D. Rodriguez, had died on September 13, 2005. In response, R.J. Strotz filed an Opposition to the Ex Parte Application and a Motion to Amend Adversary Complaint and Summons Thereto To Add Name of Party Plaintiff (the "Motion to Amend Adversary Complaint"), both on March 21, 2006.

- 15 -

A deceased plaintiff's cause of action can be enforced by the decedent's successor in interest. "A cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Code of Civ. Proc. § 377.20. Section 377.32 of the California Code of Civil Procedure further establishes eight requirements for substituting a successor in interest in place of a decedent plaintiff. Cal. Code of Civ. Proc. § 377.32.

Although the Court believes that it would have been more prudent for plaintiff's counsel to have revealed at an earlier date that plaintiff had died, through a document filed under seal or otherwise, given the circumstances of defendants' fraud, misuse of documents, and the criminal proceedings initiated against defendants in state court, the Court will excuse counsel's actions. Her fear of interference in any administration of the decedent's estate appears not to be unreasonable.

During oral arguments on April 13, 2006, defendants asserted that Federal Rule of Civil Procedure 25(a)(1) controls and that the Motion to Amend Adversary Complaint was untimely filed by proposed successor in interest, R.J. Strotz. Rule 25(a)(1) states that

> [i]f a party dies and the claim is not thereby extinguished, . . . [t]he motion for substitution may be made by any party or by the successors or representatives of the deceased party and . . . [u]nless the motion for substitution is made not later than 90 days *after the death is suggested upon the record by service of a statement of the fact of death* . . . , the action shall be dismissed as to the deceased party."

Fed. Rule Civ. Proc. 25(a)(1) (emphasis added); Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994); Ohanian v. Irwin (*In re* Irwin), 338 B.R. 839, 848 (Bankr. Cal. E.D. 2006). Had defendants' counsel read the rule more carefully, he would have realized that for the 90-day

- 16 -

period to be triggered, a suggestion of death must first be made. See Barlow, 39 F.3d at 233; Ohanian, 338 B.R. at 848. Even assuming that the Ex Parte Application filed on March 13, 2006, constitutes a Rule 25(a)(1) suggestion of death on the record and thereby commences the 90-day period within which a proposed successor in interest needed to file a motion for substitution, the Motion to Amend Adversary Complaint, filed on March 21, 2006 by R.J. Strotz, only eight days "after the death is suggested on the record," would clearly be timely.

I find that the statements contained in the Declaration of R.J. Strotz and the documentation provided in support, filed on March 21, 2006, are sufficient under the California Code of Civil Procedure section 337.32 to establish R.J. Strotz as decedent's successor in interest and to warrant the substitution of R.J. Strotz, as plaintiff's successor in interest and real party in interest in this adversary. The order authorizing amendment of the complaint adding plaintiff's counsel as successor in interest will be entered concurrently with this decision.

An appropriate order consistent with this decision will issue.

DATED: 5/2/06

_____
MAUREEN A. TIGHE
United States Bankruptcy Judge

- 17 -

## CERTIFICATE OF SERVICE BY MAIL

I certify that a true copy of this **MEMORANDUM** was mailed on **MAY 2 2006** to the parties listed below:

R.J. Strotz
320 S. Ardmore Ave., #217
Los Angeles, CA 90020

Ehsan Afaghi
Law Offices of Ehsan Afaghi
170 South Beverly Drive, Suite 315
Beverly Hills, CA 90212

Alex A. Farahmand
Amparo E. Farahmand
19528 Ventura Blvd., #257
Tarzana, CA 91536

Alex A. Farahmand
Amparo E. Farahmand
2815 Canada Blvd.
Glendale, CA 91208

DATED: **MAY 2 2006**

_Jewell M. Williams_
DEPUTY CLERK